Susan Tiedemann Seutter
Matthew J. Oppenheim
**OPPENHEIM + ZEBRAK, LLC**
4400 Jenifer Street NW, Suite 250
T:  (202) 621-9027
F:  (866) 766-1678
*Attorneys for Plaintiffs John Wiley & Sons, Inc.*
*and Pearson Education, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN WILEY & SONS, INC. and PEARSON EDUCATION, INC, <br><br>Plaintiffs, <br><br>    v. <br><br>JOHN GOLDEN and JVG BOOKS, LLC, <br><br>Defendants. | Civil Action No. _____ <br><br>Document Filed Electronically <br><br>COMPLAINT <br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs John Wiley & Sons, Inc. and Pearson Education, Inc. (collectively, "Plaintiffs"), for their Complaint against John Golden and JVG Books, LLC ("Defendants"), allege, on personal knowledge as to matters relating to themselves, and on information and belief as to all other matters, as follows:

### INTRODUCTION

1. Plaintiffs are among the world's leading educational publishers.  They provide a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.

2. Defendants are in the business of textbook arbitrage.  They purchase textbooks

at the lowest possible prices they can find them at, and then sell them at a profit to distributors and consumers. In order to maximize their profit, Defendants often buy books from unknown sources at below market prices. Frequently, these sources are overseas sources or unknown internet sellers.

3. In the course of their book arbitrage, Defendants purchase counterfeit books, which they then sell to others as legitimate textbooks. From time to time, Defendants have been put on notice that books they are selling are counterfeit.

4. Even after they have been told that certain books they have purchased are counterfeit, they have sold them to consumers and distributors as though they are legitimate.

5. Plaintiffs bring this Complaint for damages and injunctive relief to bring to an end and to seek redress for Defendants' infringement of Plaintiffs' intellectual property rights.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, based on federal question jurisdiction.

7. This is an action arising under the Lanham Act §§ 32, 42-43, 15 U.S.C. §§ 1114, 1124-1125, the Copyright Act, 17 U.S.C. § 101 *et al.*, and 19 U.S.C. § 1526.

8. Venue is proper in this district under 28 U.S.C. §§ 1391 and 28 U.S.C. § 1400(a). Jurisdiction in this district is proper because Defendants reside in this District and because Defendants, without the consent or permission of Plaintiffs, distributed and offered to distribute unauthorized copies of Plaintiffs' copyrighted works bearing Plaintiffs' trademarks, for which Plaintiffs have the exclusive rights. Such unlawful conduct occurred in this jurisdiction.

**PARTIES**

9. Plaintiff John Wiley & Sons, Inc. ("Wiley"), is a New York corporation with its

principal place of business at 111 River Street, Hoboken, New Jersey 07030.

10. Plaintiff Pearson Education, Inc. ("Pearson") is a Delaware corporation with its principal place of business at One Lake Street, Upper Saddle River, New Jersey 07458.

11. Defendant John Golden ("Golden") resides at 97 Autumn Ridge Road, Bedminster, New Jersey 07921. He is the owner and director, officer, member, agent and/or manager of JVG. Among other things, Golden sells counterfeit textbooks from the State of New Jersey through a variety of online marketplaces.

12. JVG Books, LLC ("JVG") is a New Jersey corporation with its principal place of business at 231 North Avenue West, Box 357, Westfield, New Jersey 07090. Among other things, JVG sells new and used textbooks, professional books, trade books, and other media through venues such as *Amazon.com* and *Alibris.com*.

## GENERAL ALLEGATIONS

13. Wiley serves undergraduate, graduate, and advanced placement students, and lifelong learners throughout the world. Wiley publishes educational materials in print and electronic media, notably through WileyPLUS, an integrated online suite of teaching and learning resources. Wiley's programs target the sciences, engineering, computer science, mathematics, business and accounting, statistics, geography, hospitality and the culinary arts, education, psychology, and modern languages.

14. Pearson is a world-renowned publisher of educational books and multimedia materials in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage. With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many others, Pearson provides quality content, assessment tools, and educational services in all

available media.

15. Plaintiffs' publications are widely available in the marketplace, including in retail and online bookstores, for schools, students and other consumers.

16. Plaintiffs use their alliances, affiliations and relationships with wholesalers and distributors as part of their respective overall sales, marketing and distribution efforts, expanding Plaintiffs' geographic reach to actual and potential customers, and allowing Plaintiffs to operate across various mediums and formats.

17. Plaintiffs invest heavily in textbook publishing. Each year they incur substantial costs for author royalties or other costs of content creation or licensing, copyediting and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of their editorial offices.

18. The revenue from Plaintiffs' respective sales of textbooks represents a substantial amount (and in some cases a majority) of Plaintiffs' respective annual revenues, and is therefore important to their financial health.

19. Plaintiffs suffer serious financial injury when their copyrights and trademarks are infringed. A substantial decline in revenue from textbook sales could cause Plaintiffs to cease publication of one or more deserving books. This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving works.

20. Both publishers and authors alike are deprived of income when their books are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

21. Many of Plaintiffs' customers, including libraries, academic institutions and book

retailers, obtain their stock of Plaintiffs' products from wholesalers for many reasons, including that if a customer, such as library, wishes to purchase a number of titles from different publishers, a wholesaler would be in a better position to provide that customer with access to books from across the publishing industry.

## PLAINTIFFS' FEDERALLY REGISTERED COPYRIGHTS AND TRADEMARKS

### A. Plaintiffs' Respective Copyright Registrations

22. Wiley and Pearson have duly registered their copyrights in those works described on Exhibit A, among others (hereinafter, "Plaintiffs' Authentic Works"). Plaintiffs are the copyright owners of, and /or the owners of the exclusive rights under copyright in, Plaintiffs' Authentic Works.

### B. Plaintiffs' Respective Trademark Registrations

23. Plaintiffs' Authentic Works bear trademarks and service marks as set forth on Exhibit B (hereinafter, "Plaintiffs' Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Register of the United States Patent and Trademark Office. Plaintiffs own or are the exclusive licensee of Plaintiffs' Marks. Plaintiffs' Marks are distinctive and arbitrary and are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. Plaintiffs and/or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with their Marks.

**COUNTERFEIT COPIES OF PLAINTIFFS' PUBLICATIONS**

24. Defendant Golden is a buyer and seller of college textbooks to wholesale distributors as well as to individuals. He undertakes the buying and selling of counterfeit books individually, though he uses his limited liability company, Defendant JVG, to hide his illegal activities. Defendants sell books primarily through on-line storefronts on sites such as *Amazon.com, Alibris.com* and *Abebooks.com*.

25. Beginning on a date unknown but at least as early as December 2012 and continuing to the present, Defendants have distributed counterfeit copies of Plaintiffs' Authentic Works bearing Plaintiffs' Marks (hereinafter "Pirated Books").

26. Defendants commissioned, ordered, purchased and/or imported these Pirated Books from one or more sources. In so doing, Defendants deliberately evaded legitimate sources of the products in question and chose instead to obtain illegal and counterfeit copies of Plaintiffs' products from unknown sources, for the purpose of illegally distributing and reselling such copies to consumers in the United States and elsewhere, in violation of Plaintiffs' intellectual property rights.

27. Defendants paid materially less than they would have had they purchased the books directly from the respective publishers or from a legitimate wholesaler. In so doing, they should have been aware that there was a high likelihood that the books they were purchasing were counterfeit.

28. At the time that Defendants purchased the Pirated Books, Defendants knew or should have known that the Pirated Works were infringing.

29. After receiving the Pirated Books from various sources, Defendants distributed the Pirated Books as though they were legitimate to a variety of United States wholesalers,

including to *Alibris.com*, Sterling Education Media, and Follett Higher Education, as well as to individuals. Defendants purchased Pirated Books for the purpose of distributing them to wholesalers who would further distribute them throughout the United States.

30. Defendants knowingly supervised and controlled the distribution of the Pirated Books, and had a direct financial interest in, and stood to gain a direct financial benefit from, their deliberately infringing activity.

31. By engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, Defendants also personally induced, caused, and materially contributed to infringing conduct by others, including the wholesalers to whom they sold the Pirated Works. The wholesalers further distributed the Pirated Works.

32. Defendants did more than supply the means to facilitate the infringement of Plaintiffs' intellectual property rights. They also substantially participated in, and orchestrated, such infringing activities.

33. Defendants conspired and acted in concert with others to accomplish their scheme to commit the above acts, which they knew would violate Plaintiffs' intellectual property rights, including their copyright and trademark rights in the Plaintiffs' respective Authentic Works.

34. Upon information and belief, Defendants directed and controlled the infringing activities alleged in this Complaint, and they were and are in a position to benefit economically from the infringement of Plaintiffs' intellectual property rights, which they orchestrated.

35. The Pirated Books are inferior to Plaintiffs' Authentic Works. Among other differences, the binding, glue, paper, color and printing are often different and inferior. Based on the use of Plaintiffs' trademarks, actual and prospective purchasers are likely to believe that

the Pirated Books are Plaintiffs' authentic publications.  Because the Pirated Books are inferior, this weakens, blurs, and tarnishes Plaintiffs' respective trademarks.  It further injures Plaintiffs' business reputations by causing their trademarks, and the goodwill associated with them, to be confused or mistakenly associated with a group or series of textbooks of lesser quality, as alleged above.

36. In the fall of 2013, one of Defendants' customers, Sterling Education Media, notified Plaintiffs that it had purchased Pirated Books from Defendants.  Upon inspection of those books, Plaintiffs determined that they were in fact counterfeit.  Similarly, another of Defendant's customers, *Alibris.com*, also informed Plaintiffs that it had purchased counterfeit books from Defendants.  Plaintiffs inspected the books purchased by *Alibris.com* and determined that those books too were counterfeit.

37. In November 2013, Plaintiffs put Defendants on notice of the infringement. Plaintiffs sought from Defendants information regarding the source for the counterfeit books they were purchasing.  Plaintiffs sought this information in order to halt further sales from that source.  Defendants, however, refused to provide such information, thereby allowing the counterfeit source to continue to sell infringing books to others.

38. At the same time that Plaintiffs sought information regarding the source of the counterfeit books, Plaintiffs similarly sought information relating to other titles of books Defendants had purchased from the same source.  Plaintiffs sought this in order to take action to halt further sales of those unknown titles.  Defendants however, refused to provide such information, thereby exacerbating the infringement of Plaintiffs' works.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.*

39. Plaintiffs hereby restate and incorporate by reference all allegations contained in paragraphs 1-38 above.

40. Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they have been duly registered by Plaintiffs with the United States Copyright Office and published by Plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

41. At all relevant times, Plaintiffs have been and still are the owners of all rights, title and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed or otherwise transferred to Defendants.

42. Beginning on an unknown date, but at least since December 2012, and continuing to the present, Defendants with knowledge of Plaintiffs' duly registered copyrights in the Authentic Works, infringed Plaintiffs' copyrights. Specifically, Defendants infringed Plaintiffs' exclusive rights to reproduce and distribute to the public by sale, or other transfer of ownership, the copyrighted Authentic Works by, among other things, purchasing or otherwise obtaining the Pirated Books from sources whose products Defendants knew or should have known were unauthorized and illegal; or, alternatively, distributing and selling them for profit, without the permission, license, or consent of Plaintiffs.

43. As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

44. Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious and willful.

45. Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless Defendants are restrained by this Court from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## SECOND CLAIM FOR RELIEF

### Infringement of Federally-Registered Trademarks Under 15 U.S.C. § 1114

46. Plaintiffs hereby restate and incorporate by reference all allegations contained in paragraphs 1-45 above.

47. This claim, arising under Section 32 of the Lanham Act (15 U.S.C. § 1114), is for infringement of trademarks registered to Plaintiffs in the United States Patent and Trademark Office.

48. Without Plaintiffs' authorization, Defendants are producing, marketing, offering for sale, and selling in commerce textbooks under Plaintiffs' Marks.

49. Defendants' aforesaid uses of Plaintiffs' Marks have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Defendants' goods, in that the public, and others, are likely to believe that Defendants' goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiffs, all to Plaintiffs' irreparable harm.

50. Plaintiffs are informed and believe, and on that basis allege, that Defendants will continue to use Plaintiffs' Marks unless enjoined.

51. Defendants, by their above-enumerated acts, willfully and knowingly have violated and infringed Plaintiffs' rights in and to the federally-registered Marks, in violation of

Section 32 of the Lanham Act (15 U.S.C. § 1114), and Defendants threaten to further violate and infringe Plaintiffs' said rights.

52.     Plaintiffs are entitled to an order restraining and permanently enjoining Defendants from further use of Plaintiffs' Marks under 15 U.S.C. § 1116(a).

53.     Defendants' aforesaid conduct was intentional, or deliberately reckless, and without foundation in law.

## THIRD CLAIM FOR RELIEF

### Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)

54.     Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1 through 53 as though fully set forth herein

55.     Defendants are infringing the federally registered Plaintiffs' Marks though their use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the sale, offering for sale, marketing, distributing, or advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to deceive the public.

56.     Defendants are intentionally using Plaintiffs' Marks on unauthorized product. Defendants are intentionally infringing upon Plaintiffs' trademark rights in order to further their own business enterprises.

57.     The counterfeiting by Defendants of Plaintiffs' Marks has caused and will continue to cause serious and irreparable injury to the reputation and goodwill of Plaintiffs for which Plaintiffs have no adequate remedy at law.  Unless Defendants are restrained by this Court from continuing their counterfeiting activities, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from

further counterfeiting.

## FOURTH CLAIM FOR RELIEF

### Trafficking in Counterfeit Documentation or Labels Under 18 U.S.C. § 2318

58. Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1 through 57 as though fully set forth herein.

59. Defendants have knowingly and willfully trafficked into the United States counterfeit documentation and labels affixed to the literary works in the form of the Pirated Books.

60. Defendants knowingly used the United States mail/postal service or a facility of interstate or foreign commerce to traffic in counterfeit documentation and labels affixed to the Pirated Books.

61. Defendants have been using counterfeit labels or counterfeited documentation or packaging, and continue to use counterfeits of Plaintiffs' copyrighted label, documentation, and packaging in commerce, in connection with their sale and distribution of counterfeit textbooks, including counterfeit copies of the Authorized Works.

62. Plaintiffs' labels, documentation or packaging, which are registered with the United States Copyright Office and the United States Patent and Trademark Office, are substantially similar to the counterfeit labels, documentation or packaging used by the Defendants in connection with the Pirated Books, the latter of which appear to be genuine, but are not.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1. Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

2. An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Pirated Books with documents relating to all of the purchases and sales;

3. That Defendants be required to pay to Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

4. An order enjoining Defendants from further infringing upon Plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 502;

5. That Defendants be required to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

6. That Defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of, Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

7. That Defendants be required to pay actual damages and profits or statutory damages, at Plaintiffs' election, pursuant to 18 U.S.C. § 2318;

8. An order enjoining Defendants from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

9. For prejudgment interest at the applicable rate;

10. Punitive damages;

11.   For attorneys' fees costs and costs of suit; and

12.   For such other and further relief the Court deems proper.

                                     Respectfully submitted,

Dated: February 12, 2014                    By:   */s/Susan T. Seutter*

                                     Matthew J. Oppenheim
                                     Susan Tiedemann Seutter
                                     **OPPENHEIM + ZEBRAK, LLP**
                                     4400 Jenifer Street, NW, Suite 250
                                     Washington, DC 20015
                                     matt@oandzlaw.com
                                     susan@oandzlaw.com
                                     T: (202) 621-9027
                                     F: (866) 766-1678

                                     *Counsel for Plaintiffs*

## **LOCAL RULE 201.1 CERTIFICATION OF NON-ARBITRABILITY**

Pursuant to Local Civil Rule 201.1, the undersigned counsel for Plaintiffs, John Wiley & Sons, Inc. and Pearson Education, Inc., hereby certifies that the within the matter is not arbitrable, being that the Complaint seeks damages that are in an excess of $150,000.

Dated: February 12, 2014                                     */s/ Susan Tiedemann Seutter*
                                                                                    Susan Tiedemann Seutter
                                                                                    susan@oandzlaw.com

## LOCAL RULE 11.2 AND 40.1 CERTIFICATION

Pursuant to Local Civil Rules 11.2 and 40.1, the undersigned counsel for Plaintiffs, John Wiley & Sons, Inc. and Pearson Education, Inc., hereby certifies that the matter in controversy is not related to any other action, arbitration or administrative proceeding in any court or of any pending arbitration or administrative proceeding.

Dated: February 12, 2014                              */s/ Susan Tiedemann Seutter*
                                                      Susan Tiedemann Seutter
                                                      susan@oandzlaw.com