NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN WILEY & SONS, INC., et al.,** | **Civil Action No. 14-942 (AET)** |
| **Plaintiffs,** | |
| **v.** | **MEMORANDUM OPINION** |
| **JOHN GOLDEN, et al.,** | |
| **Defendants.** | |

This matter comes before the Court upon Plaintiffs John Wiley & Sons, Inc. and Pearson Education, Inc.'s (collectively, "Plaintiffs") motion to amend their Complaint in order to add new factual allegations against Defendants John Golden and JVG Books, LLC (collectively, "JVG") and to add Third-Party Defendant Stanley Matthews ("Matthews") as a defendant in this matter [Docket Entry No. 19]. JVG and Matthews both oppose Plaintiffs' motion on futility grounds with JVG arguing that Plaintiffs' proposed copyright infringement claim lacks the required specificity and Matthews arguing that this Court lacks personal jurisdiction over him. The Court has fully reviewed and considered all arguments made in support of, and in opposition to, Plaintiffs' motion. The Court considers Plaintiffs' motion without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Plaintiffs' motion is GRANTED.

## I.    Background and Procedural History

This case arises out of Plaintiffs' allegations that JVG violated Plaintiff's intellectual property rights by purchasing and distributing counterfeit copies of Plaintiffs' authentic textbooks bearing Plaintiffs' copyrights, trademarks and service marks. Plaintiffs initially asserted claims against JVG for Copyright Infringement under 17 U.S.C. §§ 101, *et seq.*,

Trademark Infringement under 15 U.S.S. § 1114, Trademark Counterfeiting under 15 U.S.C. §

1114(1)(a) and Trafficking in Counterfeit Documentation or Labels under 18 U.S.C. § 2318.  In

their Proposed First Amended Complaint, Plaintiffs seek to include additional allegations based

on facts discovered after their original Complaint was filed and to amend their claims for relief to

include a claim for Federal Unfair Competition and False Designation of Origin in violation of

15 U.S.C. § 1125(a) and to remove their claim for and Trafficking in Counterfeit Documentation

or Labels under 18 U.S.C. § 2318.  Plaintiffs also seek to add Matthews as a party defendant and

to assert the same claims for relief against him as asserted against JVG; although Plaintiffs'

claims against JVG pertain, at this time, to only 5 textbooks, whereas those claims against

Matthews would pertain to 50, the same five identified with respect to JVG and an additional 45.

 Plaintiffs claim that their motion should be granted under FED.R.CIV.P. ("Rule") 15(a)(2),

which provides that leave to amend should be "freely give[n] . . . when justice so requires."

Despite JVG and Matthews' claims to the contrary, Plaintiffs argue that their proposed

amendments are not futile.  In this regard, Plaintiffs contend that their copyright infringement

claim does not involve a heightened pleading center, as JVG argues, but that even if such a

standard did apply, their Proposed First Amended Complaint easily meets same.  Plaintiffs also

contend that this Court has personal jurisdiction over Matthews.

 With respect to their copyright infringement claim, Plaintiffs' argue that to set forth a

claim of copyright infringement, they need only plead two elements:  "(1) that they own valid

copyrights; and (2) that Defendants violated one or more of the exclusive rights in 17 U.S.C. §

106, by copying or distributing Plaintiffs' copyrighted work."  (Pl. Br. at 6).  Plaintiffs contend

that both of these elements have been more than adequately set forth in their Proposed First

Amended Complaint.  For example, Plaintiffs note that ¶ 44 of the Proposed First Amended

Complaint states that the works listed in Exhibit A to the Proposed First Amended Complaint
"constitute original works and copyrightable subject matter pursuant to the Copyright Act, and
are protected by registrations issued by the United States Copyright Office."  (Pl. Br. at 7
(quoting Proposed First Amended Compl. "PFAC" ¶ 44) (internal quotation marks omitted)).
Plaintiffs further note that the applicable copyright registration numbers for all of the known
alleged pirated books are listed in Exhibits A and B to the Proposed First Amended Complaint.
As such, Plaintiffs maintain that they have satisfied pleading the first element of a claim of
copyright infringement.

With respect to the second element, "copying," Plaintiffs argue that "copying" is "'a
shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set
forth in 17 U.S.C. § 106.'"  (*Id*. at 7 (quoting *Dun & Bradstreet Software Servs. v. Grace
Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (citation omitted)).  Plaintiffs argue that
included in these five rights are the rights of reproduction and distribution and, as set forth in
their Proposed First Amended Complaint, Plaintiffs' allege that "[b]eginning on a date unknown,
but at least as early as the fall of 2012 and continuing at least until March 2013, Defendants have
distributed counterfeit, infringing and/or non-genuine copies of Plaintiffs' Authentic Works
bearing Plaintiffs' Marks (hereinafter "Pirated Books")."  (Pl. Br. at 5 (quoting ("PFAC") ¶ 25)).
However, Plaintiffs do not stop there; instead, to the extent JVG is correct and Plaintiffs must
plead the "who, what, when, and where" of the copying to state a claim for copyright
infringement, Plaintiffs outline the specific factual allegations that they contend meet this
heightened pleading standard.  (*See* Pl. Br. at 8-9 (quoting PFAC ¶¶ 29-31, 34 & 40)).
Consequently, Plaintiffs argue that they have adequately stated the second element of a claim of
copyright infringement.

Further, they argue that their use of the aforementioned and/or statement, *i.e.*, Defendants have "distributed counterfeit, infringing and/or non-genuine copies" of Plaintiffs' authentic works does not render Plaintiffs' proposed amended copyright infringement claim futile. Contrary to JVG's arguments, Plaintiffs contend that the use of this "and/or" statement does not leave JVG "without fair notice of what Plaintiffs' copyright claim is or the grounds upon which it rests" nor do Plaintiffs believe that it is a problem because "a textbook cannot be both fake and authentic at the same time." (Pl. Reply Br. at 3; Docket Entry No. 28). Instead, Plaintiffs claim that "'counterfeit, infringing and/or non-genuine' [are] legal terms that have overlapping and different meanings under the Copyright Act and the Lanham Act" and that Plaintiffs' use of same in their Proposed First Amended Complaint "does not somehow erase the very clear and detailed specific factual allegations that form the basis for the copyright claim and are set forth in the proposed First Amended Complaint." (*Id.* at 3-4).

Likewise, Plaintiffs argue that the first sale doctrine has no impact on their proposed amended copyright infringement claim. In this regard, Plaintiffs note that 17 U.S.C. § 109(d) provides that "[t]he privileges prescribed by subsections (a) and (c) do not, unless authorized by the copyright owner, extend to any person who has acquired possession of the copy . . . from the copyright owner, by rental, lease, loan, or otherwise, without acquiring ownership of it." (*See* Pl. Reply Br. at 5). Plaintiffs argue that the allegations set forth in the First Proposed Amended Complaint do not support a finding that ownership of Plaintiffs' copyrighted works was ever transferred. Instead, Plaintiffs claim that only possession was transferred. To support this argument, Plaintiffs point to ¶ 30 of their Proposed First Amended Complaint, which states:

> When Matthews obtained possession of these book interiors from
> Shares, he did not obtain legal ownership. The copies Matthews
> obtained had not been sold, distributed or injected into the stream
> of commerce by Plaintiffs. Plaintiffs never transferred ownership

> of those particular copies, nor were Plaintiffs ever compensated for
> those copies.  Plaintiffs never authorized the sale of those copies.
> Rather, these copies were misprints or overruns made during the
> printing process.  Plaintiffs require that such misprints or overruns
> be destroyed and rendered unusable, not enter into the stream of
> commerce.  Plaintiffs' authorized printer that produced these
> copies had the same understanding and requirement, as did each of
> [sic] each of the pertinent shredding or recycling companies,
> including Shares.

As such, Plaintiffs argue that "[t]he factual allegations in the First Amended Complaint explicitly *contradict* Defendants' self-serving speculation that Plaintiffs sold the interior pages and parted with title to them, leaving defendants free to distribute books sourced from a recycler who breached a promise to destroy the material."  (*Id*. at 4-5).  As a result, Plaintiffs contend that the first sale doctrine does not make their proposed amended copyright infringement claim futile.

With respect to Matthews' claims regarding personal jurisdiction, Plaintiffs argue that by responding to JVG's Third-Party Complaint, Matthews has "already effectively conceded the issue of personal jurisdiction in this case."  (*Id*. at 7).  However, to the extent Plaintiffs need to establish personal jurisdiction over Matthews, even though Matthews has already invoked this Court's jurisdiction by denying JVG's allegations and asserting defenses with respect to same, and Plaintiffs' claims raise essentially the same issues in the same litigation, Plaintiffs' argue that "it is abundantly clear that this Court possesses specific personal jurisdiction over Matthews and due process is satisfied."  (*Id*.)  In this regard, Plaintiffs claim that the following facts support a finding that this Court possesses specific personal jurisdiction over Matthews:

> Golden is a New Jersey resident.  His company, JVG, is also
> located in New Jersey.  Matthews deliberately entered into a
> business transaction with Golden/JVG for the purchase and sale of
> textbooks that infringed the rights of Plaintiffs, both of which are
> headquartered in New Jersey.  Matthews dealt with Golden
> directly.  Matthews distributed the allegedly infringing textbooks
> to Defendants in New Jersey for resale.  Finally, Matthews

> knowingly accepted payment from JVG for the sale of these
> allegedly infringing textbooks.

(*Id*. at 8 (citations omitted)).

JVG and Matthews both oppose Plaintiffs' motion, arguing that Plaintiffs' proposed amendments would be futile.  JVG, in its opposition, maintains that Plaintiffs' motion to amend is futile because Plaintiffs' proposed copyright infringement claim is not pleaded with the required specificity to survive a motion to dismiss, while Matthews contends that Plaintiffs' proposed addition of him as a party defendant is futile because this Court lacks personal jurisdiction over Plaintiff's claims against him.

With respect to JVG's opposition, JVG argues that Plaintiffs' copyright infringement claim must be pled with specificity.  In this regard, JVG claims that Plaintiffs "must adequately allege:  (1) 'which specific original work is the subject of the copyright claim,' (2) 'that plaintiff owns the copyright,' (3) 'that the work in question has been registered in compliance with the statute,' and (4) 'by what acts and during what time the defendant has infringed the copyright.'" (JVG Opp. at 5 (quoting *Gee v. CBS, Inc.*, 471 F.Supp. 600, 643 (E.D.Pa. 1979), *aff'd* 612 F.2d 572 (3d Cir. 1979)); Docket Entry No. 27).  JVG argues that Plaintiffs' proposed copyright infringement claim does not meet this pleading standard.  Specifically, JVG takes issue with Plaintiffs' "repeated use of conditional language" in their Proposed First Amended Complaint "by asserting **'and/or'** allegations in support of [their] infringement claim."  (*Id*.)  Indeed, JVG argues that "the proposed Amended Complaint repeatedly asserts that the textbooks distributed by Defendants are 'counterfeit', 'infringing' **and/or** 'non-genuine' copies' and, consequently, "**Defendants do not have fair notice of what the Plaintiffs' claim is and the grounds upon which it rests** as it is unclear whether the Plaintiffs are claiming that the textbooks are 'fake' or

are authentic, but nevertheless 'infringing.'" (*Id*. at 6). JVG claims that "[c]ertainly, the subject textbooks cannot be both authentic and fake." (*Id*.)

JVG claims that the contradiction in Plaintiffs' Proposed First Amended Complaint is problematic because it "directly impacts the viability of Plaintiffs' copyright infringement claims[.]" (*Id*.) In this regard, JVG argues that if Plaintiffs' proposed claim is based on the alleged fact that the interior of the textbooks at issue are authentic, but that the sale of said textbooks was infringing because the books sold were overruns or misprints that were supposed to be destroyed, then that claim fails because Plaintiffs' power over the sale of the textbooks ceased once it sold same to the recycler, Shares, Inc. ("Shares"). Indeed, JVG relies on the defense of the "first sale doctrine," 17 U.S.C. § 109(a), to support its argument that Plaintiffs' copyright infringement claim would be futile because "regardless of the implied restriction that allegedly provided for Shares' destruction of the textbooks," "Plaintiffs did not retain title to the textbooks when same were transferred to Shares[,]" and, as a result, the "restriction did not extend to Matthews or [JVG]." (*Id*. at 7). As such, JVG argues that neither it, nor Matthews, can be held liable for infringing Plaintiffs' copyrights. JVG thus argues that Plaintiffs' proposed amendments would be futile.

Similarly, JVG contends that if Plaintiffs' proposed copyright infringement claim is premised on the alleged fact that the textbooks are counterfeit because of the fake textbook covers, then this claim is also futile because Plaintiffs do not allege that they "own the copyrights for the textbook covers, nor do they assert that the textbook covers have been registered in compliance with the copyright statute, nor do they identify the copyright registration numbers for the textbook covers." (*Id*.) In this regard, JVG contends that Plaintiffs cannot rely on the

copyright registrations for each of the textbooks set forth in Exhibit A to the Proposed First Amended Complaint because "a copyright of a book does not include the cover[.]"  (*Id.*)

JVG also argues that Plaintiffs' proposed copyright infringement claim is futile because it is based in part on allegations pled "upon information and belief," which JVG claims is impermissible.

As noted above, Matthews also opposes Plaintiffs' motion to amend, arguing that the proposed amendments would be futile as to him because this Court lacks personal jurisdiction over him.  Matthews claims that New Jersey's long arm jurisdiction over him is "clearly absent." (Matthews Opp. Br. at 5; Docket Entry No. 25).  First, Matthews claims that JVG must independently establish jurisdiction over him.  In other words, Matthews claims that it is not enough for Plaintiffs to point to the fact that Matthews has already appeared in this matter as a Third Party Defendant.  Instead, Matthews argues that, under Rule 14(a), Plaintiffs' Proposed First Amended Complaint must include sufficient jurisdictional facts to on its face establish the Court's personal jurisdiction over Matthews before Plaintiffs may be "permitted by way of amendment to add the third party defendant [here Matthews] as a party defendant."  (*Id.* (quoting *Corbi v. U.S.*, 298 F.Supp. 521 (W.D. Pa. 1969)).

Second, Matthews argues that Plaintiffs' Proposed First Amended Complaint fails to do so because it fails to set forth that Matthews has had sufficient minimum contacts with New Jersey to make it reasonable to require Matthews to defend against Plaintiffs' claims here.[1] Relying on *Jacobs v. Walt Disney World*, Matthews argues that:

> The minimum contacts that are sufficient to establish specific
> jurisdiction consist of "purposeful acts by that party, directed

---

[1] Matthews notes that personal jurisdiction can either be specific, where the claims arise out of a defendant's contacts with the state, or general, where the claims are not directly related to the defendant's contacts with the forum state, but where the defendant has engaged in continuous and systematic activities in the state.  All parties seem to agree that general jurisdiction would not be applicable to Matthews.

> toward a state, which make it reasonable for the defendant to
> anticipate being haled into court there" . . . . Unilateral actions of
> "those who claim some relationship with a non-resident defendant
> cannot satisfy the requirement of contact with the forum state. . . .
> Thus the defendant must have purposely availed itself "of the
> privilege of conducting activities within the forum state, thus
> invoking the benefits and protections of its laws. . . . These
> requirements ensure that a defendant has a "fair warning that a
> particular activity may subject him to the jurisdiction of a foreign
> sovereign."

(*Id.* at 7 (quoting *Jacobs*, 309 N.J. Super 443, 453, 707 A.2d 477 (App. Div. 1998))).

Matthews maintains that Plaintiffs have not established personal jurisdiction over him because his "contacts with New Jersey are virtually non-existent." (*Id.* at 8). With respect to his actions involving the textbooks at issue in this litigation, Matthews states that:

> The sale of these rebound books to Golden was negotiated and
> finalized in Florida in discussions with Golden. The discussions
> took place in Golden's condominium in Florida. The agreements
> reached were oral. The transaction was then complete. At that
> point, Golden could have taken possession of the books, which
> were in a warehouse in Chickamauga, Georgia. Golden could have
> personally shipped them anywhere to anyone. Instead he asked
> Matthews to ship them to defendant JVG's place of business in
> New Jersey. The books were not shipped COD.
>
> After the books were shipped, Matthews has a vague recollection
> of having three or four incidental and minor telephone
> conversations with Golden basically about whether the books
> arrived safely, in good condition, which they had. Matthews later
> received payment in due course.

(*Id.* ) Matthews claims that these facts establish that he has not purposefully made sufficient contact with New Jersey to establish specific personal jurisdiction over him. Indeed, Matthews claims that "[t]he mere act of shipping goods to New Jersey at the direction of the owner cannot reasonably be considered a tort or wrongful act committed in New Jersey." (*Id*. at 9). As a result, Matthews argues that Plaintiffs' proposed amendments are futile as to him. Matthews also intimates that Plaintiffs claims would be futile anyway because Plaintiffs lost any copyright

9

or trademark rights in their textbooks when they sent same to Shares and because the copyright of a book or periodical does not include its cover.

Further, even if the Court were to find that there were sufficient minimum contacts between Matthews and New Jersey to support this Court's jurisdiction over him, which, as stated above, Matthews fiercely disputes, Matthews claims that personal jurisdiction would still be wanting because this Court's exercise of jurisdiction over Matthews would not comport with traditional notions of fair play and substantial justice.  In this regard, Matthews claims that it would be unreasonable for this Court to exercise jurisdiction over him because the burden on him to defend here would be "enormous."  (*Id*. at 11).  To support this argument, Matthews points to his "limited means[,]" noting that he conducts a small part time business out of his home, has no employees, and has severe financial problems, including a federal lien of $326,000, which he must satisfy over a 10 year period.  (*Id*.).  Matthews also points to the allegedly "oppressive" manner in which this matter is being litigated to support his claim of burden.  Specifically, Matthews points to the discovery requests Plaintiffs have already served, which are not confined to the four textbooks at issue in the original Complaint, and which are unlimited in time.  (*Id*. at 12).  In addition, Matthews notes that through their Proposed First Amended Complaint, Plaintiffs seek to add 45 new titles to the claims Matthews would have to defend against.  Matthews argues that having to defend himself, a person of limited means, far from home against these "hugely expanded" charges would be "an extraordinary burden."   (*Id*.) Therefore, Matthews claims that it would be unfair for this Court to exercise jurisdiction over him even assuming he had the requisite minimum contacts with New Jersey, which he claims he does not.

## II.    Analysis

### A.  Standard of Review

Pursuant to Fed.R.Civ.P.15(a)(2), leave to amend the pleadings is generally granted freely.  *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir. 2000).  Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*.  However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face."  *Harrison Beverage Co. v. Dribeck Imp., Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted).  To evaluate futility the District Court uses "the same standard of legal sufficiency" as applied for a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Id.*

A motion to amend is properly denied where the proposed amendment is futile.  An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted).  To determine if an amendment is "insufficient on its face," the Court utilizes the motion to dismiss standard under Rule 12(b)(6)  (*see Alvin*, 227 F.3d at 121) and considers only the pleading, exhibits attached to the pleading, matters of public record, and

undisputedly authentic documents if the party's claims are based upon same.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief[.]" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008 "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

Although a pleading does not need to contain "detailed factual allegations," a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  Additionally, in assessing a motion to dismiss, although the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

## B.  Discussion

Here JVG and Matthews raise only futility arguments in opposition to Plaintiffs' motion to amend.  As a result, the Court only addresses same herein.  The Court begins its analysis with the arguments raised by JVG regarding the alleged lack of specificity of Plaintiffs' copyright infringement claim and then turns to Matthews' assertions regarding this Court's lack of personal jurisdiction over him.

### 1.  Copyright Infringement

To set forth a claim of copyright infringement, a plaintiff must allege two elements:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 112 L.Ed. 2d 358 (1991).  *See Winstead v. Jackson*, 509 Fed. Appx. 139, 143 (3d Cir. 2013) (stating that "[t]o establish a claim of copyright infringement, the plaintiff must establish ownership of a valid copyright, and unauthorized copying of protectable elements of the plaintiff's work.")  "With regard to the first element, a certificate of registration with the copyright office constitutes 'prima facie evidence of the validity of the copyright and of the facts stated in the certificate,' including those pertaining to ownership."  *Bradshaw v. Am. Inst. for History Educ.*, Civil No. 12-1367 (RBK/KMW), 2013 WL 1007219, *3 (D.N.J. March 13, 2013) (quoting *Granger v. Acme Abstract Co.*, --- F.Supp.2d ---, No. 09-2119, 2012 WL 4506674 at *2 (D.N.J. Sept. 27, 2012)).  With respect to the second,  "'[c]opying' contemplates use of the plaintiff's work in a way that interferes with any of a copyright owner's rights under 17 U.S.C. § 106, which include the exclusive right to reproduce the work in copies, distribute copies of the work, and prepare derivative works based on it."  *Kumar v. Institute of Elec. and Elecs. Eng'rs,*

*Inc.*, Civ. Action NO. 12-6870 (KSH) (CLW), 2013 WL 5467090, *3 (D.N.J. Sept. 30, 2013)

(citing *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)).

 As JVG highlights in its brief, one decision from the Eastern District of Pennsylvania,

*Gee v. CBS, Inc.*, 471 F.Upp. 600, 643 (E.D. Pa. 1979), *aff'd*, 612 F.2d 572 (3d Cir. 1979),

stands for the proposition that a more specific pleading standard must be met for a copyright

infringement claim to survive a motion to dismiss.  Indeed, according to *Gee*, in order to

properly plead a claim for copyright infringement, a plaintiff must include allegations describing

"which specific original work is the subject of the copyright claim, that plaintiff owns the

copyright, that the work in question has been registered in compliance with the statute and by

what acts and during what time defendant has infringed the copyright."  471 F.Supp. at 643

(citing 2a Moore's Federal Practice and Procedure 8.17(7) at 1767 (2d ed. 1978)).  Certain recent

decisions, including decisions from this District, have embraced Gee's more detailed pleading

standard.  *See, e.g.*, *Hanover Arch. Serv., P.A. v. Christian Testimony-Morris, N.P.*, Civil Action

No. 10-cv-05455 (SDW), 2011 WL 6002045 at *5 (D.N.J. Nov. 29, 2011); *Nourison Indus., Inc.

v. Virtual Studios, Inc.*, Civil Action No. 09-5746 (POS), 2010 WL 2483422 at *3 (D.N.J. June

3, 2010);  *Goodman v. Harry Fox Agency*, No. Civ. 03-1176 (JBS), 2003 WL 25269381 at *9

(D.N.J. Dec. 30, 2003).

 The *Gee* pleading standard, however, "has not been embraced by any Third Circuit panel

(other than the one that affirmed without opinion that court's disposition)."  *Bradshaw*, 2013 WL

1007219, at *4 n.4.  As a result, "courts in this district have routinely allowed copyright

infringement claims to proceed upon a plaintiff's allegations of the two essential elements of

ownership and copying, without seeming to require more."  *Id.* (citing *Coach Inc. v. Bags &

Accessories*, No. 10-2555, 2011 WL 1882403 (D.N.J. May 17, 2011) (granting plaintiff's motion

for default judgment on a copyright infringement claim because "both elements have been sufficiently asserted to state a cause of action for copyright infringement"); *Coach, Inc. v. Fashion Paradise, LLC*, 10-4888, 2012 WL 194092 (D.N.J. January 20, 2012 (same); *E.H. Yachts, LLC v. B&D Boatworks, Inc.*, No. 06-164, 2006 WL 3068560 at *3 (D.N.J. Oct. 27, 2006) (finding that plaintiff adequately pled prima facie case of copyright infringement by alleging two essential elements, including second element's subcomponents of access and substantial similarity)).  This Court, much like the aforementioned courts and the court in *Kumar*, "declines to engraft a *Gee* analysis."  2013 WL 5467090, at *4 n.2.  Instead, here the Court finds that so long as the two elements of copyright infringement have been pled, Defendants will have fair notice under Rule 8(a) of the claims against them.

Turning to the Proposed First Amended Complaint, the Court finds that in it, Plaintiffs at this stage have alleged ownership of a valid copyright.  In ¶ 44 of the Proposed First Amended Complaint, Plaintiffs state that the works listed in Exhibit A to said Complaint "constitute original works and copyrightable subject matter pursuant to the Copyright Act, and are protected by registrations issued by the United States Copyright Office."  (PFAC ¶ 44).  Further, Plaintiffs then list the applicable copyright registration numbers in Exhibits A and B to the Proposed First Amended Complaint.  As noted above, "a certificate of registration with the copyright office constitutes 'prima facie evidence of the validity of the copyright and of the facts stated in the certificate,' including those pertaining to ownership."  *Bradshaw*, 2013 WL 1007219, at *3 (quoting *Granger*, 2012 WL 4506674, at *2.)  As such, the Court finds that Plaintiffs have satisfied the first element of pleading a cause of action for copyright infringement.

With respect to the second element, "copying," the Court is likewise satisfied that it has been sufficiently pled.  As already stated, "copying" refers to the act of interfering with or, in

other words infringing, any of a copyright owner's rights under 17 U.S.C. § 106, which include

the rights of reproduction and distribution.  Here, in ¶¶ 29, 30, 31, 34 and 40 of the Proposed

First Amended Complaint, Plaintiffs have set forth in significant detail how JVG and Matthews

allegedly interfered with their rights under 17 U.S.C. § 106.  Specifically, Plaintiffs assert:

> 29.  In the fall of 2012, and perhaps at other times as well, Mathews obtained the interiors of new textbooks that were meant for destruction.  According to Matthews, he paid approximately $10,000 in cash to an individual at Shares for such materials.  According to Shares' management, it did not approve, know about, or receive any such payment.
>
> 30.  When Matthews obtained possession of these book interiors from Shares, he did not obtain legal ownership.  The copies Matthews obtained had not been sold, distributed or injected into the stream of commerce by Plaintiffs.  Plaintiffs never transferred ownership of those particular copies, nor were Plaintiffs ever compensated for those copies.  Plaintiffs never authorized the sale of those copies.  Rather, these copies were misprints or overruns made during the printing process.  Plaintiffs require that such misprints or overruns be destroyed and rendered unusable, not enter into the stream of commerce.  Plaintiffs' authorized printer that produced these copies had the same understanding and requirement, as did each of [sic] each of the pertinent shredding or recycling companies, including Shares.
>
> 31.  Matthews obtained these unrecycled materials from one or more unauthorized persons at Shares and then tampered with, altered, and sold them, including in an impaired condition with fake textbook covers and other flaws.  Among other things, in January and February of 2013, and perhaps at other times as well, Matthews had fake book covers printed by a company in North Carolina, the HF Group (a/k/a Acme Binding), which were intended to be indistinguishable from the legitimate covers on Plaintiffs' textbooks.  Mathews had these unauthorized copies of the book covers bound by the HF Group to the interior of the books.  The end result of these and other related activities is the Pirated Books, an inferior version of Plaintiffs' Authentic Works bearing Plaintiffs' Marks.

<p style="text-align:center">***</p>

<p style="text-align:center">16</p>

34.  Matthews sold the Pirated Books to JVG Defendants, and perhaps others.  After receiving the Pirated Books from Matthews, the JVG Defendants distributed them to a variety of United States wholesalers, including *Alibris.com*, Sterling Education Media, and Follett Higher Education, as well as to individuals, under the false pretense that they were Plaintiffs' Authentic Works.  The JVG Defendants purchased Pirated Books for the purpose of distributing them to wholesalers who would further distribute them throughout the United States.

***

40.  In the fall of 2013, one of JVG Defendants' customers, Sterling Education Media, notified Plaintiffs that it had purchased Pirated Books from JVG Defendants.  Upon inspection of those books, Plaintiffs determined that they were in fact infringing.  Similarly, another of JVG Defendants' customers, *Alibris.com*, also informed Plaintiffs that it had purchased Pirated Books from JVG Defendants.  Plaintiffs inspected the books purchased by *Alibris.com* and determined that those books too were infringing.

(PFAC ¶¶ 29, 30, 31, 34, & 40).  The foregoing allegations set forth who allegedly infringed Plaintiffs' copyrights, the acts of infringement and the time frame of infringement.  As such, Plaintiffs' allegations more than adequately set forth a claim of copyright infringement.[2]

JVG's arguments concerning Plaintiffs' use of and/or statements in their Proposed First Amended Complaint do nothing to change the Court's opinion.  As noted by JVG, in ¶¶ 22, 23, 25, 26, 27 and 28 of the Proposed First Amended Complaint, Plaintiffs use the conditional phrase "counterfeit, infringing, and/or not genuine" in their allegations.  Relying on two out of district cases, *E.I. DePont de Nemours and Co. v. Heraeus Holding*, Civ. Action No. 11-773-SLR-CJB, 2012 WL 4511258, *7  n.5 (D. Del. Sept. 28, 2012)[3] and *Lindsay v. The Wrecked and abandoned Vessel R.M.S. Titanic*, No. 97 Civ. 9248 (HB), 1999 WL 816163 (S.D.N.Y. Oct. 13,

---

[2] Indeed, the Court is satisfied that even if the heightened pleading standard set forth in *Gee* was applicable, Plaintiffs' detailed allegations would likewise meet that standard.

[3] While of no real significance to this Opinion, the Court notes that the decision in this matter was a Report and Recommendation, not an Opinion.

1999), JVG argues that the use of same renders Plaintiffs' Proposed First Amended Complaint futile because it does not give Defendants a clear indication as to what claims are being asserted.

The Court, however, finds those cases to be easily distinguishable in that in said cases the plaintiffs had used the and/or language in the context of pleadings that asserted very broad allegations with little factual support for same.  In contrast, here, Plaintiffs have set forth specific allegations to support their copyright infringement claim.  The fact that Plaintiff's Proposed Frist Amended Complaint refers to the textbooks distributed by JVG and Matthews as "counterfeit, infringing and/or non-genuine," which, as Plaintiffs note, are legal terms that have overlapping and different meanings under the Copyright Act and Lanham Act, does not diminish the detailed factual allegations also included therein.

Nor does the first sale doctrine render Plaintiffs' proposed amendments futile.  While JVG is correct that "'where the publisher has parted with the title to the copyrighted work and despite the fact that as between the immediate parties there is a contractual restriction on its use, this restriction does not bar subsequent purchasers from vending the periodical as a literary work free of the restriction" (JVG Opp. Br. at 6 (quoting *Independent News v. Williams*, 293 F.2d 510, 517 (3d Cir. 1961)), that is only true where the copyright owner has parted title with the protected work.  While JVG baldly states that "Plaintiffs did not retain title to the textbooks when same were transferred to Shares," (*Id*. at 7), Plaintiffs contend otherwise and the allegations in their Proposed First Amended Complaint, when taken as true and viewed in the light most favorable to Plaintiffs, reasonably support the conclusion that title was not transferred. (*See* PFAC ¶ 40 (asserting that "[w]hen Matthews obtained possession of these book interiors from Shares, he did not obtain legal ownership.  The copies Matthews obtained had not been sold, distributed or injected into the stream of commerce by Plaintiffs.  Plaintiffs never

18

transferred ownership of those particular copies, nor were Plaintiffs ever compensated for those

copies.  Plaintiffs never authorized the sale of those copies.")).[4]  As a result, the first sale

doctrine does not render Plaintiffs' proposed copyright infringement claim futile.

      Finally, the Court is not convinced that Plaintiffs' copyright infringement claim fails

because Plaintiffs did not identify any copyright registration numbers for the covers of the books

set forth in Exhibit A to the proposed Amended Complaint.  In this regard, the Court notes that

the cases relied upon by JVG in support of this proposition are dated and do not issue from the

Third Circuit or this District.  Further, those cases also clearly involved the first sale doctrine.

Thus, while in *Fawcett Publications v. Ellito Pub. Co.*, for example, the court on reargument

stated:

> [w]e are not convinced that the copyright of a book or periodical
> includes the cover.  We can think of no convincing reason why it
> should or should be intended to do so since the law itself requires
> the presence of the notice on the title page or the one next to it and
> since the cover ordinarily has no literary copyrightable matter and,
> when an individual design is embodied in it, its relation to the
> copyrighted literary content is remote and its authorship and
> ownership do not prima facie appear as in the case of the book's
> contents.

46 F.Supp. 717, 718 (D.C.N.Y. 1942), this statement was made without any citations to any

authority and, as noted, was made on reargument.  In its initial opinion the *Fawcett* court denied

the plaintiff's motion for summary judgment on its copyright infringement claim, which was

based on the fact that the defendant had bound the plaintiff's comic "together with other comic

publications not owned or copyrighted by the plaintiff within one copyrighted cover of its

own[.]"  *Id*.  In so doing, the court focused on the fact that the comics at issue had been sold and

the defendant had purchased them secondhand.  *Id*.  Similarly, in *Doan v. American Book Co.*,

---

[4] Whether title was in actuality transferred is a fact question for another day and not an appropriate consideration in
the context of Plaintiffs' motion to amend.

the books at issue had already been sold and there, the court determined that the secondhand

buyer of the books had the right to repair same via both rebinding and recovering, but also had to

clearly indicate that the books so repaired were secondhand books.  105 F. 772, 778 (7th Cir.

1901).

These cases do not persuade the Court that Plaintiffs' copyright infringement claim is

futile because the copyrights for the works do not apply to their covers and the covers of the

textbooks were not independently copyrighted.  Moreover, even if the Court was so persuaded,

Plaintiff's proposed amended copyright infringement claim would not be futile because there are

other independent bases supporting same.

### 2.  Personal Jurisdiction

In determining whether personal jurisdiction over a defendant exists, "a federal court

sitting in diversity must undertake a two-step inquiry.  First, the court must apply the relevant

state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court

must apply the precepts of the Due Process Clause of the Constitution."  *IMO Indus., Inc. v.*

*Kiekert AG*, 155 F.3d 254, 259 (Sept. 3, 1998).  Here, there is no dispute that the relevant long-

arm statute is New Jersey's.  In New Jersey, the aforementioned inquiry "is collapsed into a

single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction

to the fullest limits of due process."  *Id*. (citing *Dejames v. Magnificence Carriers, Inc.*, 654 F.2d

280, 284 (3d Cir. 1981)).  "The New Jersey Supreme Court has made it clear that New Jersey

courts look to federal law for interpretation of the limits on in personam jurisdiction."  *Mesalic v.*

*Fiberfloat Corp.*, 897 F.2d 696, 698 n.5 (3d Cir. 1990) (citing *Avdel Corp. v. Mecure*, 58 N.J.

264, 268, 277 A.2d 207 (1971); *Charles Gendler Co. v. Telecom Equity Corp.*, 102 N.J. 460,

469, 508 A.2d 1127 (1986); *Lebel v. Everglades Marina*, 115 N.J. 317, 322, 558 A.2d 1252 (1989)).

Personal jurisdiction over a defendant can either be "general" in nature, where the suit is not directly related to the defendant's contacts with the forum state, but is, instead, based on the defendant's "continuous and systematic" contacts with the state (*see Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 415 n. 9, 416, 104 S.Ct. 168, 80 L.Ed.2d 404 (1984); *see also Waste Mgmt., Inc. v. Admiral Ins. Co.*, 138 N.J. 106, 119 (1994)) or "specific," where the cause of action arises directly out of a defendant's contact with the forum state. *Id.* at 414 n.8; *see also Waste Mgmt.*, 138 N.J. at 119. Here, the parties agree that "specific jurisdiction" is the only form of personal jurisdiction potentially applicable to Matthews.

In order for specific personal jurisdiction to exist, the defendant must have had sufficient "minimum contacts" with the forum state. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (internal quotation marks and citation omitted). The minimum contacts frameworks performs:

> two, related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system. The protection against inconvenient litigation is typically described in terms of "'reasonableness'" or "fairness." We have said that the defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'"

*Id.* at 292 (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Miliken v. Meyer*, 311 U.s. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940))). *See also Waste Mgmt.*, 138 N.J. at 121-22.

21

Under this test, the Court finds that Matthews has had sufficient minimum contacts with New Jersey to support this Court's jurisdiction over him.  Here, Matthews is alleged to have purposefully entered into a business transaction with Golden and/or JVG for the purchase and sale of textbooks that infringed Plaintiffs' copyrights and trademarks.  (*See, e.g.*, PFAC ¶¶ 23, 25-30, 34).  Golden is alleged to be a resident of New Jersey and JVG is alleged to be headquartered in New Jersey with its principal place of business being located in the state.  (*Id.* ¶¶ 8-9).  Matthews accepted payment from JVG for the sale of the allegedly infringing textbooks.  (*See Id.* ¶¶ 27, 28, 34).  Matthews also shipped the allegedly infringing textbooks to JVG in New Jersey, albeit not COD.  (*See Id.* ¶ 27; Matthews Opp. Br. at 3).  These facts support a finding that Matthews has had sufficient minimum contacts with New Jersey to support this Court's jurisdiction over him.  Further, Matthews' arguments concerning the enormous burden he would face if forced to litigate here notwithstanding, the Court finds that requiring Matthews to be subject to this Court's jurisdiction would not offend traditional notions of fair play and substantial justice.  As a result, the Court finds that Plaintiffs' inclusion of Matthews as a party defendant in their Proposed First Amended Complaint would not be futile.[5]

---

[5] In light of the fact that the Court has determined that the allegations contained in Plaintiffs' Proposed First Amended Complaint support a finding that personal jurisdiction exists over Matthews, the Court does not reach the question of whether an independent basis for personal jurisdiction over Matthews is necessary.  The Court does, however, note that the case law relied upon by Matthews to support that proposition seems to address subject matter jurisdiction, not personal jurisdiction.

**III.      Conclusion**

For the reasons set forth above, Plaintiffs' Motion to Amend is GRANTED.  An appropriate Order follows.


Dated: February 19, 2015

<div align="center" style="margin-left:40%">

s/  Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE**

</div>